**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**GREGORY R. JUNKIN,**

        **Plaintiff,**

-vs-                                                                           **Case No. 6:04-cv-1537-Orl-31KRS**

**EMERALD LAWN MAINTENANCE AND**
**LANDSCAPING, INC. and ANTHONY V.**
**KALMAN,,**

        **Defendants.**

## ORDER

In this case, the Plaintiff, Gregory Junkin ("Junkin") has sued the Defendants, Emerald Lawn Maintenance and Landscaping, Inc. ("Emerald") and Anthony Kalman ("Kalman") (collectively referred to, where appropriate, with Emerald as the "Defendants"), claiming that he is owed unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA") for work performed while in the Defendants' employ. This matter comes before the Court on the Defendants' Motion for Summary Judgment (Doc. 19) and Junkin's Response thereto (Doc. 21).

**I.  Background**

    A. Facts

Emerald is a Florida corporation owned by Kalman, and is primarily engaged in the business of providing lawn maintenance services to homeowners and small businesses in Brevard

County, Florida.[1] (Doc. 19 at 2).[2] Kalman works for Emerald on a daily basis. (*Id.*). Emerald employs between eight and ten employees, and is an "employer" as defined by the FLSA. (*Id.*). During the years 2001 through 2004, Emerald had gross sales of $140,543, $236,953, $381,852, and $476,120, respectively. (*Id.*; *see also* Doc. 19, Att. 5). Junkin was an Emerald employee from March of 2001 until May of 2004.

During his employment, Junkin performed lawn maintenance services, and worked as a foreman and supervisor of a lawn maintenance crew.[3] (Doc. 19 at 2). His duties and responsibilities included: mowing, trimming, edging, planting plants and shrubs, fertilizing, equipment maintenance, preparing equipment and trucks, training employees, ensuring that lawn work was properly performed, and performing monthly property evaluations. (Doc. 19, Att. 2 at 8). Junkin's work required him to transport and apply herbicides, insecticides and fertilizers to the properties owned by Emerald's customers. (Doc. 21 at 2; Doc. 21, Att. 2 at 1). The herbicides, as well as one insecticide, that Emerald purchased and used were manufactured outside of Florida and shipped into the state. (Doc. 21 at 2; Doc. 21, Att. 4 at 7, 9-10, 13; *Id.* at Att. 5 at 2-3). The fertilizers Emerald used were blended in Florida, but most if not all of the ingredients, except for

---

[1] All of Emerald's services are performed in Brevard County, Florida.

[2] The Defendants provided a section entitled "Statement of Undisputed Facts," (*see* Doc. 19 at 2), which the Plaintiff does not dispute, (*see* Doc. 21 at 1).

[3] From March of 2001 through March of 2002, Junkin worked as a "grounds man." (Doc. 19, Att. 2 at 7). From April of 2002 through March 30, 2004, he worked as a ground maintenance foreman. (*Id.*). From April 1, 2004 through May of 2004, he worked as a ground maintenance supervisor. (*Id.*).

phosphate, were shipped to Florida from other states.  (Doc. 21 at 2; Doc. 21, Att. 4 at 8, 9; *Id*. at Att. 5 at 4-5).

From April first through November first, during each year for which he was employed by Emerald, Junkin worked approximately 55 hours per week.  (Doc. 19, Att. 2 at 10).  From November second through March thirtieth, he worked 40 hours per week, with five hours of overtime per month.  (*Id*.).  He rarely worked on Saturday or Sunday.  (*Id*.).  Junkin was compensated with an hourly wage and a weekly cash bonus, both of which increased over time.  (Doc. 19, Att. 2 at 9).

C. Claims and Arguments

In Count I, Junkin asserts that he worked many weeks in excess of forty hours per week, and that the Defendants violated the FLSA by failing to compensate him at a rate not less than one and one-half times the regular rate at which he was employed.  In Count II, Junkin asserts that he is entitled to unpaid wages under Chapter 448 of the Florida Statutes.

The Defendants have moved for summary judgment, arguing that: (1) Emerald is not an "enterprise" covered by the FLSA; (2) any liability to which Kalman is subjected is only derivative of Emerald's liability, and thus Kalman is similarly not liable under the FLSA; (3) Junkin is not covered by the "individual" coverage provisions of the FLSA; and (4) Count II should be remanded to state court because this Court lacks supplemental jurisdiction over that claim.

## II.     Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994).  Which facts are material depends on the substantive law applicable to

the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).[4]

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material

---

[4] All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

### III.    Legal Analysis

A. The Fair Labor Standards Act

Section 207(a) of the FLSA ("Employees engaged in interstate commerce . . .") provides, in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA thus provides coverage in two circumstances: (1) where an employee is engaged in commerce or the production of goods for commerce ("individual coverage"); or (2) where an employee works for an "enterprise" engaged in commerce or in the production of goods for commerce ("enterprise coverage"). *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914 (9th Cir. 2003).

B. Enterprise Coverage

For enterprise coverage under the FLSA, an enterprise must be engaged in commerce or in the production of goods for commerce, which means that the enterprise:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . .

29 U.S.C. § 203(s)(1). Emerald has demonstrated that its annual volume of business does not exceed $500,000, and thus Emerald is not subject to enterprise coverage under the FLSA. *Falk v. Brennan*, 414 U.S. 190, 201 (1973).

### C. Individual Coverage

An employee may still be covered under the FLSA even if the business employing that employee is not covered. *DeArment v. Curtins, Inc.*, 790 F. Supp. 868, 870 (D. Minn. 1992). This type of coverage is known as "individual coverage," and applies where an employee is engaged in commerce or in the production of goods for commerce. *Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 803 (N.D. Ohio 1996). As with enterprise coverage, individual coverage hinges on whether the employee is engaged in interstate commerce. *Id.*; *see also Rivera v. Heights Landscaping, Inc.*, 2004 WL 434214 at *3 (N.D. Ill. March 5, 2004) ("In determining whether an employee is a covered individual under the FLSA, the focus is on the nature of the activities of the employee, rather than the general character of the employer's business.") (internal citations and quotation omitted).

The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce. *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 121 (1946); *Warren-Bradshaw Drilling Co. v. Hall*, 317 U.S. 88, 90 (1942). In the instant case, Junkin does not contend that he was engaged in the production of goods for interstate commerce, and instead only asserts that he was engaged in commerce. (*See* Doc. 21 at 3-6). The test to determine whether an employee is engaged in commerce "is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce

as to be a part of it." *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943).  *See also Boekemeier v. Fourth Universalist Soc'y in City of NY*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000) ("To be engaged in commerce, a substantial part of the employee's work must be related to interstate commerce.") (internal citations and quotations omitted).

Here, Junkin's "individual coverage" argument rests entirely on his assertion that he "transported and applied herbicides, insecticides and fertilizers to the properties of Emerald's customers" and thereby "engaged in commerce in the form of transportation." (Doc. 21 at 4-5).[5] To that end, he relies on *Alonso v. Garcia*, 2005 WL 1901682 (11th Cir. Aug. 10, 2005), in which the court found that a laborer was "engaged in commerce" because his duties as a laborer required him to transport fumigation materials which had traveled in interstate commerce to the defendant-company's customers within the state.  *Id*.  That case, however, provides no factual background with which to compare the facts of the instant case.  For example, it is unclear whether the plaintiff in *Alonso* worked primarily as a transporter, rather than a user, of the goods in question. Accordingly, that case is not persuasive.[6]

---

[5] Junkin also relies on the theory that his use of a cellular phone constitutes the use of a channel of interstate commerce, thereby affording him individual coverage under the FLSA. (Doc. 21 at 7). Junkin's reliance on *Winkler v. Am. Sales & Mgmt. Found., Inc.*, 1983 WL 1985 (N.D. Ga. Jan. 4, 1983), to support this proposition, however, is misplaced.  In *Winkler*, the plaintiff clearly engaged in interstate commerce by using the mail to send documents throughout the United States and by placing interstate phone calls.  *Id*. at *2; *see also DeArment,* 790 F. Supp. at 871 (employees who regularly received or transmitted interstate phone calls were engaged in interstate commerce for purposes of FLSA).  In the instant case, however, Junkin has offered no evidence to show that the phone calls he made were interstate calls.  Instead, he simply states that he used a cellular phone to communicate with his supervisor, (*see* Doc. 21, Att. 2 at 2), but offers no evidence to suggest that his supervisor was located anywhere other than in Brevard County, Florida.

[6] As an unpublished opinion, under Eleventh Circuit Rule 36-2, *Alonso* is not binding precedent and is, at best, persuasive authority.  However, given the fact that the court there relied on

The Court is not persuaded that the mere act of transporting goods that previously found themselves in the flow of interstate commerce means that an employee "engaged in commerce" and is thus subject to "individual coverage" under the FLSA.[7]  *See Joles v. Johnson County Youth Serv. Bureau, Inc.*, 885 F. Supp. 1169, 1178-79 (S.D. Ind. 1995) (where plaintiff did not participate in movement of interstate commerce, or in any activity essential or directly related thereto, she was not "engaged in commerce," and fact that goods she obtained as part of her duties had previously traveled in interstate commerce was irrelevant);[8] *Rivera*, 2004 WL 434214 at *3 (plaintiff could not establish individual coverage, based on "production of goods for commerce" rationale, "merely by showing that in the course of [his] work [he] used rakes, fertilizers, or other goods that originated out of state").  Brought to its logical end, such a theory would mean that an

---

undisclosed facts in the record, the Court does not find that case persuasive here.

[7] The Court notes that transportation-related activities have always been treated specially in relation to interstate commerce.

[8] *See Joles*, 885 F. Supp. at 1178:

> For an employee to be "engaged in commerce" she must be either directly participating in the actual movement of persons or things in interstate commerce or doing work directly supporting the movement of goods in interstate commerce. An employee may participate in the actual movement of interstate commerce by working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or by regularly using the instrumentalities of interstate commerce in her work, *e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel. The second alternative for coverage--performing work supporting or directly related to an instrumentality of interstate commerce--is characterized by activities such as repairing and maintaining interstate roads, railroads, and telephone lines. The test for activities falling within this second alternative is conceived less in terms of how essential the activity is to the instrumentality of commerce in a "but for" sense, and more in terms of "remoteness" from actual interstate commerce, as informed by the purpose of the Act to leave local activities uncovered.

employee who, in the course of his duties, simply moves an item (which originated in another state) from one place to another within the same property, or even within the same room within a building, has "engaged in commerce" by "transporting" that item.  Such a theory cannot stand, as it would, in essence, nullify the "interstate" requirement and ultimately render the Commerce Clause meaningless.  Although it is true that the phrase "engaged in commerce" is to be given a broad, liberal construction, it is equally true that the application of the FLSA to particular circumstances "is essentially a line-drawing exercise."  *Brennan v. Wilson Bldg, Inc.*, 478 F.2d 1090, 1093-94 (5th Cir. 1973).  The facts of the instant case require that this line be drawn in such a way as to exclude Junkin from individual coverage under the FLSA.

      D. State Law "Unpaid Wages" Claim

Although Junkin's Complaint couches this claim in terms of unpaid overtime wages, in his Answers to Interrogatories, he states that this claim is actually for "3 days of unpaid accurate and vested vacation pay." (Doc. 19, Att. 2 at 15, 14).  This state law claim is thus not related to the FLSA claim over which this Court has original jurisdiction under 28 U.S.C. section 1331. Accordingly, the Court will not exercise its supplemental jurisdiction over the state law claim under 28 U.S.C. section 1367(a).  This claim will be dismissed without prejudice and with leave for Junkin to file in the appropriate state court.

**IV.**  **Conclusion**

Emerald is not subject to enterprise coverage under the FLSA, and Junkin has not "engaged in commerce" and thus is not subject to individual coverage.  Having disposed of Junkin's federal law claims, the Court declines to exercise supplemental jurisdiction over his unrelated state law claims.  Accordingly, it is

**ORDERED THAT** the Defendants' Motion for Summary Judgment (Doc. 19) is GRANTED. This case is removed from the April 3, 2006 trial docket, and the Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 1, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party